IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | CIVIL ACTION NO. 1:12-cv-01002 |
| Plaintiff, | ) ) | |
| v. | ) ) | COMPLAINT |
| SILVER DINER, INC., | ) ) | |
| Defendant. | ) ) ) | JURY TRIAL DEMAND |

NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of sex, female, and to provide appropriate relief to Laura Jones ("Jones") who was adversely affected by such practices. Plaintiff, the U.S. Equal Employment Opportunity Commission ("the Commission"), alleges that Defendant, Silver Diner, Inc. ("Defendant"), subjected Jones to a sexually hostile work environment because of her sex, female. The Commission further alleges that Defendant retaliated against Jones when it reduced her work hours and subsequently discharged her because she complained about the employment discrimination.

JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section

1

706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5(f)(1) and (3) ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of North Carolina.

## PARTIES

3. Plaintiff, the U.S. Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII of the Civil Rights Act of 1964, and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §2000e-5(f)(1) and (3).

4. At all relevant times, Defendant has continuously been a North Carolina corporation doing business in the state of North Carolina and the city of Lexington, and has continuously had at least fifteen employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e (b), (g), and (h).

## STATEMENT OF CLAIMS

6. More than thirty days prior to the institution of this lawsuit, Jones filed a charge with the Commission alleging violations of Title VII by Defendant. All conditions precedent to the institution of this lawsuit have been fulfilled.

7.      From around June 2010 until on or about February 14, 2011, Defendant engaged in unlawful employment practices at its restaurant in Lexington, North Carolina, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. §2000e-2(a)(1) as set forth below.  Further, from approximately early-October 2010 through February 14, 2011, Defendant engaged in unlawful employment practices, in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), by reducing Jones' hours and discharging her because she opposed employment practices made unlawful by Title VII.

8.      <u>Sexual Harassment</u>. Laura Jones worked for Defendant as a waitress.  From around June 2010 until around the end of October 2010, Defendant subjected Jones to sexual harassment that created a sexually hostile work environment based on her sex, female.  Specifically, soon after Jones began her employment with Defendant in or around May 2010, one of Defendant's co-owners, who is also responsible for day-to-day management of Defendant's restaurant, began subjecting Jones to unwelcome sexual conduct, including sexual comments, sexual requests and sexual touching.  The alleged harasser is referred to hereinafter as "Co-owner I."

9.      In June 2010, Co-owner I approached Jones outside Defendant's restaurant where Jones was waiting for a co-worker, and told Jones she looked "sexy" out of uniform.  Thereafter, Co-owner I made requests to Jones to tuck in her shirt so he could see her butt, and also to wear her hair down because her hair looked "sexy" that way.  Co-owner I continued to make sexual comments on a weekly basis throughout Jones' employment with Defendant.

10. Around the end of July 2010 or beginning of August 2010, Co-owner I started rubbing up against Jones while she was working at the waitress stand and would put his hands on her when she would pass him. Jones told Co-owner I to stop touching her multiple times.

11. In or around August 2010, Co-owner I began asking Jones questions about her boyfriend and telling her she would get further at work if she did not have a boyfriend. Comments such as these occurred on a daily basis beginning in August 2010. Jones repeatedly told Co-owner I that her boyfriend was none of his business.

12. In early October 2010, Co-owner I approached Jones, forcibly grabbed her arm, and asked if she had gotten rid of her boyfriend yet. Co-owner I told Jones that he already instructed Jones to get rid of her boyfriend. Jones replied that her personal life was none of his business and that he "crossed the line."

13. After the incident referenced in paragraph 12 above, Jones complained about the harassment to Defendant's Head Waitress who also assists with managerial duties for Defendant. The Head Waitress advised Jones to notify another of Defendant's owners (hereinafter "Co-owner II"), about the harassment. Jones did so. Co-owner II said he would take care of it, and that he would talk to Co-owner I as well as Defendant's Vice President.

14. Despite Jones' complaints, the sexual comments and touching by the Co-owner continued.

15. The harassment was unwelcome to Jones as evidenced by her requests to Co-owner I to stop touching her, and by her complaints to Defendant's Head Waitress and Co-owner II.

16. Defendant is liable for the sexual harassment because it was perpetrated by one of Defendant's owners, who also co-managed the business on a day-to-day basis.

17. Defendant is liable for the sexual harassment because Co-owner I, the alleged harasser, had supervisory authority over Jones as a co-owner and manager.

18. <u>Reduction of Hours</u>. After Jones complained in early October 2010, Defendant deliberately reduced her work hours because of her complaints. Specifically, Co-owner I instructed Defendant's Head Waitress to cut Jones' hours in order to force Jones to resign. Additionally, in late October, 2010, Co-owner I approached Jones and told her that if he did not get what he wanted (implying sex), her job would be in jeopardy.

19. Jones immediately attempted to reach the Head Waitress and Co-owner II to complain about the incident, but was unable to reach either. Therefore, the next day Jones complained to Co-owner II about Co-owner I's threat to terminate her, and again about the sexual harassment.

20. After Jones complained to Co-owner II about Co-owner's I's threat to terminate her and the sexual harassment, Defendant continued to reduce Jones' hours, and also began scheduling her to work night shifts more frequently. As a result, Jones received less money in tips due to fewer hours and because Defendant's restaurant is busiest during the day shifts.

21. Jones confronted Co-owner I and Co-owner II about the reduction in hours and told them that she believed it was in retaliation for complaining about sexual harassment. Sometime in December 2010, Co-owner I stated to Jones something like, "I told you that I would make it hard on you before Christmas."

22. In December 2010 or January 2011, Defendant's Vice President (who is part owner of Defendant's business and Co-owner II's father), came to Defendant's restaurant. Jones complained to him about the sexual harassment and the reduction of her hours. Defendant's Vice President thereafter told Jones that he asked Co-owner I about her complaints and that Co-owner I denied them. Defendant's Vice President also told Jones he would fix her hours and she should call the police if anything else happened. Jones' hours were not restored.

23. <u>Discharge</u>. On or about February 14, 2011, after being notified that her next upcoming shift had been reduced by several hours, Jones drove to the Defendant's restaurant to meet with Co-owner I and Co-owner II about her schedule. Co-owner II told her he decided to give her shift to another employee. During the meeting, Jones offered to provide proof of her prior complaints to the Head Waitress about sexual harassment and retaliation. In response, Co-owner II told Jones to get out of his face and Co-owner I called the police. Jones went outside and waited for the police to arrive.

24. When police arrived at the restaurant, Jones told the officer about the meeting with Co-owner I and Co-owner II, as well as the sexual harassment and reduction of her hours. The police officer told Co-owner II that he had to make a

6

Case 1:12-cv-01002-TDS-JLW   Document 1   Filed 09/07/12   Page 6 of 9

decision as to whether Jones was terminated, and if she was not terminated, he needed to tell Jones her work schedule. Co-owner II told Jones that she was fired.

25. The effect of the practices complained of above has been to deprive Jones of equal employment opportunities and otherwise adversely affect their status as employee because of her sex, female and in retaliation for engaging in protected activity.

26. The unlawful employment practices complained of above were intentional.

27. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Jones.

PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from maintaining a sexually hostile work environment, and from retaliating against employees who oppose unlawful discrimination, make a charge of unlawful discrimination, or participate in an investigation of unlawful discrimination.

B. Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities for women, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make Jones whole by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of the unlawful employment practices, including but not limited to reinstatement or front pay.

D. Order Defendant to make Jones whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above in amounts to be determined at trial.

E. Order Defendant to make Jones whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices described above, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, loss of self-esteem and loss of civil rights, in amounts to be determined at trial.

F. Order Defendant to pay Jones punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

DATED this the 7th day of September, 2012.

    Respectfully submitted,

    EQUAL EMPLOYMENT OPPORTUNITY
    COMMISSION

    P. DAVID LOPEZ
    General Counsel

8

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel
US Equal Employment Opportunity
Commission
131 M Street, NW
Washington, D.C. 20507

**/s/ Lynette A. Barnes**
LYNETTE A. BARNES (NC Bar 19732)
Regional Attorney

TINA BURNSIDE
Supervisory Trial Attorney

**/s/ Darryl L. Edwards**
DARRYL L. EDWARDS (PA Bar ID#205906)
Trial Attorney
US EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Charlotte District Office
129 W. Trade Street, Suite 400
Charlotte, NC 28202
Telephone: 704.954.6467
Facsimile: 704.954.6412
Email: darryl.edwards@eeoc.gov

**ATTORNEYS FOR PLAINTIFF**

9